**LOCAL 1445, UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, AFL–CIO, Plaintiffs, Appellants,**

v.

**The STOP & SHOP COMPANIES, INC., Defendant, Appellee.**

No. 85-1476.

United States Court of Appeals, First Circuit.

Argued Oct. 7, 1985.

Decided Nov. 5, 1985.

Warren H. Pyle, Boston, Mass., with whom Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, P.C., Boston, Mass., was on brief for plaintiffs, appellants.

Arthur Murphy, Braintree, Mass., with whom Regina Williams Tate and Murphy, Lamere & Murphy, Braintree, Mass., were on brief for defendant, appellee.

Before COFFIN, BOWNES and TIMBERS,* Circuit Judges.

---

4. *Meinhard v. Salmon,* 249 N.Y. 458, 464, 164 N.E. 545, 546 (1928).

* Of the Second Circuit, by designation.

TIMBERS, Circuit Judge.

Local 1445 ("appellant") appeals from a summary judgment entered June 5, 1985 in the District of Massachusetts, A. David Mazzone, *District Judge,* affirming an arbitrator's award that Bradlees, Inc., a division of The Stop & Shop Companies, Inc. (collectively "appellee"), could hire non-union Sunday-only employees under the parties' collective bargaining agreement (the "Agreement"). On appeal, appellant contends that the arbitrator's award is not supported by the Agreement or the facts before the arbitrator. We hold that the arbitrator's award does not come within the limited scope permitting judicial review of arbitration awards. We affirm.

## I.

We shall summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Appellant is the local union that represents, among others, the employees of appellee Bradlees in Massachusetts and Rhode Island. Appellant entered into the Agreement with appellee to be effective for the period July 4, 1982 to July 6, 1985. The Agreement contained an arbitration provision that governed all grievances. Any arbitration decision was to be final and binding on both parties.

The instant grievance arose when Massachusetts changed its Sunday closing laws, effective March 27, 1983, to allow stores like appellee's to remain open on Sundays. At the time the Agreement was being negotiated both sides anticipated such a change in the law. There were lengthy negotiations as to whether a new class of Sunday-only employees should be covered by the Agreement. Appellant wanted Sunday-only employees fully covered. Appellee wanted them excluded. Appellee expected that the new law would require at least time and a half wages for Sunday employees. It feared that also giving them full Agreement benefits would put appellee at a cost disadvantage with its competitors who, in other states, had been using non-union Sunday-only employees. The negoti-

ations concluded with a provision that appears to leave the issue unresolved. Although the Agreement purports to cover most part-time employees, Article 11, Section 3, provides in part:

"In the event that any other changes in the Sunday closing laws or the administration thereof which affects stores under this contract takes place subsequent to the date of this Agreement, the Employer may request modification of the Agreement so that the Employer will not be placed at a competitive disadvantage...."

As the date for the first open Sunday approached, appellee tried to find employees who would work on Sundays. Appellee first circulated sign-up sheets among its existing employees. When it did not get enough responses and it discovered that its competitors were hiring non-union Sunday-only employees, appellee determined to do new hiring. Appellee contacted the union heads of the three affected locals. It persuaded two locals to agree that it could hire non-union Sunday-only employees. Appellant, however, refused to agree. Appellee began hiring new non-union Sunday-only employees for stores in appellant's territory and treated them as not under the Agreement. Appellant then filed the instant grievance. The parties went to arbitration before an arbitrator selected by the American Arbitration Association. The parties stipulated that the only issue for the arbitrator was:

"Did the Employer violate the Collective Bargaining Agreement by hiring 'Sunday Only' Employees to perform Sunday work and/or by not applying the terms of the Collective Bargaining Agreement to such Employees?"

After two days of hearings, the arbitrator found that the Agreement permitted appellee to hire non-union Sunday-only employees and to treat them as not covered by the Agreement. The arbitrator found that Article 11, Section 3, was the "controlling provision" of the Agreement for the instant grievance and that the "pivotal words" of the provision were "so that the Employer

will not be placed at a competitive disadvantage." The arbitrator found the controlling provision to be ambiguous. Based on the pivotal words, the parties' negotiating history, appellee's dealings with the other locals and analogous Agreement provisions, the arbitrator concluded that the parties' intent was that, if the change in the Sunday closing law placed appellee at a competitive disadvantage, appellee could request reasonable modifications of the Agreement and appellant's acceptance of those modifications would be implicit. The arbitrator also concluded that appellee's hiring of non-union Sunday-only employees was reasonable and therefore a valid modification of the Agreement's part-time employee coverage pursuant to the controlling provision. Finally, the arbitrator concluded that the clause of the controlling provision which reads "the Employer may request modification" was merely a reiteration of a right both parties already had under the Agreement and was not dispositive.

Appellant sought review of the arbitrator's decision in the district court under 29 U.S.C. § 185 (1982). Both parties moved for summary judgment and submitted briefs and supporting documents. The district court granted summary judgment in favor of appellee, holding that the arbitrator's decision was not reviewable. From that judgment, appellant has taken the instant appeal.

## II.

■ The sole issue before us is whether the district court correctly held that the arbitrator's decision was not reviewable. We affirm the district court.

In the *Steelworkers Trilogy*, the Supreme Court found that the policies behind federal labor law favor the arbitration system for labor disputes. The Court therefore held that an arbitration award is reviewable by a federal court only in very limited circumstances. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960); *Unit-*

ed *Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). *See also* 29 U.S.C. § 173(d) (1982) ("Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement....."). The thrust of the Court's logic was that, because the collective bargaining agreement called for final and binding arbitration, the parties bargained only for the arbitrator's decision and are not entitled to judicial review unless it can be shown that the arbitrator acted in a way for which neither party could have bargained. *Enterprise Wheel, supra*, 363 U.S. at 599. In a recent decision the Court has stated that "[u]nless the arbitral decision does not 'dra[w] its essence from the collective bargaining agreement,' [*Enterprise Wheel, supra*, 363 U.S.] at 597, a court is bound to enforce the award and is not entitled to review the merits of the contract dispute." *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 764 (1983).

Relying upon these decisions, our Court has developed its own test for determining whether an arbitrator's decision may be reviewed by a court. In *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045 (1st Cir. 1977), we held that a court may review and set aside an arbitrator's decision only if the decision was: (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact. *Id.* at 1050. *See also Trustees of Boston University v. Boston University Chapter*, 746 F.2d 924 (1st Cir.1984). The district court in the instant case held that the arbitrator's decision did not fall within any of the *Bettencourt* exceptions to unreviewability. We agree.

First, the decision clearly is not unfounded in reason and fact. The arbitrator found an ambiguous provision and, applying the parties' negotiating history and a

reasonableness standard, resolved that ambiguity in favor of appellee. We agree with the arbitrator that the controlling provision is ambiguous. Even if we were to disagree with the arbitrator's construction of the provision, however, that would not be sufficient to overcome the presumption of unreviewability. The arbitrator's construction of the controlling provision was well within his "great latitude in construing ambiguous language...". *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34, 37 (1st Cir.1985). Further, there was a substantial record of negotiating history before the arbitrator on which he factually grounded his decision. This is not a case of basing a decision only on incredible evidence and public policy. *See Bacardi Corp. v. Congreso de Uniones Industriales*, 692 F.2d 210, 213 (1st Cir.1982) (if arbitrator based decision only on employer's first negotiation response and legislative policy of protecting employees, arbitrator was not faithful to the agreement).

■ Second, there is nothing so palpably faulty about the arbitrator's reasoning that no judge could ever make such a ruling. Arbitrators are not required to follow principles of contract law or judicial precedent. *Westinghouse Elevators of Puerto Rico, Inc. v. S.I.U. de Puerto Rico*, 583 F.2d 1184, 1187 (1st Cir.1978). The arbitrator's decision must be simply in the realm of what a judge might decide. In the instant case, it is conceivable that the competitive disadvantage clause of the controlling provision could mean that any modification that does no more than keep appellee on an equal footing with its competitors would be acceptable. Appellant argues that such a reading is inconceivable because it gives appellee unfettered discretion over the operation of the provision. Appellant fails to acknowledge that its reading of the provision would give it unfettered discretion over the operation of the provision. It is beside the point that there may be other, possibly even better, interpretations of the provision. That is not the standard. We believe that it is entirely conceivable that a judge viewing the record that the arbitrator had before him could rule in a similar manner. That is enough.

Third, the arbitrator's decision is not mistakenly based on a crucial assumption that is a proven non-fact. There are no facts at issue in this case. The arbitrator based his decision on his perception of the parties' intent, which in turn was based on a record neither party disputes. *See Electronics Corp. of America v. International Union of Electrical, Radio and Machine Workers, Local 272*, 492 F.2d 1255 (1st Cir.1974) (exception applies when sole basis for arbitrator's decision was an inaccurate record of employee's suspension).

Finally, appellant argues that the arbitrator violated the Agreement's "standard no modification clause" by his interpretation of the controlling provision. Article 22, Section 4, of the Agreement states "[t]he arbitrator shall have no authority to add to, subtract from, or amend any of the provisions of this Agreement." Although the circuits are split as to what effect this type of clause has on an arbitrator's powers, *compare Holly Sugar Corp. v. Distillery Union*, 412 F.2d 899 (9th Cir.1969) (clause places no additional limits on arbitrator's powers) *with Torrington Co. v. Metal Products Workers Union*, 363 F.2d 677 (2d Cir.1966) (clause narrows arbitrator's powers), we need not enter that fray. We are satisfied that the arbitrator's interpretation of the ambiguous controlling provision did not add to, subtract from, or alter the provision; it merely clarified it. The "standard no modification clause", therefore, is not before us.

### III.

To summarize: We hold that the instant arbitration decision is not within any of the narrow *Bettencourt* exceptions to the unreviewability of such decisions. It can not be said that this arbitration decision did not "draw its essence" from the collective bargaining agreement. We therefore affirm the district court's summary judgment in favor of appellee.

Affirmed.