79 F.3d 1136
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
AMERICAN POSTAL WORKERS UNION, etc., et al., Plaintiffs, Appellants,
v.
UNITED STATES POSTAL SERVICE, et al., Defendants, Appellees.
 No. 95-1865.
 United States Court of Appeals, First Circuit.
 March 19, 1996.
 
 Appeal from the United States District Court for the District of Massachusetts
 Cornelius J.P. Sullivan, with whom Brenda E.W. Sullivan and Sullivan & Walsh were on brief, for appellants.
 Susan M. Poswistilo, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, R. Andrew German, Chief Appellate Counsel, United States Postal Service, and Brian M. Reimer, Attorney, United States Postal Service, were on brief, for appellees.
 Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.
 PER CURIAM.
 
 
 1
 When Congress established the Postal Service (the Service) in 1970, it set in place a labor relations format patterned after the private sector. See 39 U.S.C. §§ 1201-1209 (1994). Under that framework, appellant American Postal Workers Union, AFL-CIO (the Union) entered into a series of collective bargaining agreements with the Service. During the currency of one such agreement, the Service discharged a trio of postal workers (Dennis Daniels, Jonathan Davis, and Karen Johnson) for cause.
 
 
 2
 The three all of whom worked at the Sudbury, Massachusetts post office were members of a bargaining unit represented by the Union. The Union prosecuted grievances on their behalf. Following a five-day evidentiary hearing, the arbitrator found that the grievants committed the acts with which they had been charged, and that the Service had just cause for the disciplinary actions which it took in first suspending, and later ousting, the grievants.
 
 
 3
 The Union filed an action in the federal district court with a view toward vacating the arbitral award.[1] Its complaint claimed that the award "did not draw its essence from the collective bargaining agreement" because it was "not based on sufficient evidence to sustain a finding of just cause." In a well-reasoned opinion, the district court granted the Service's motion for summary judgment. See American Postal Workers Union v. United States Postal Serv., No. 92-10364-NG, slip op. (D. Mass. June 28, 1995). The Union appeals. We summarily affirm.
 
 
 4
 There is no need to tarry. Having read the voluminous record, considered the parties' briefs, and entertained oral argument, we find no basis to disturb either the arbitral award or the district court's decision. To the precise contrary, we regard this as a paradigmatic case in which to put into practice our oft-stated belief that, when lower courts have done first-rate work, an appellate tribunal should not wax longiloquent simply to hear its own words resonate. See In re San Juan Dupont Plaza Hotel Fire Litig., 989 F.2d 36, 38 (1st Cir.1993). Consequently, we affirm the judgment for substantially the reasons elucidated in the opinion below. We add only a few brief comments.
 
 
 5
 The statute that confers a right to challenge an arbitral award in a postal employment case, 39 U.S.C. § 1208(b), is an analog to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), and therefore, the case law under the two statutes is generally interchangeable. See Miller v. United States Postal Serv., 985 F.2d 9, 10 n. 1 (1st Cir.1993). Under either scheme, "courts are not authorized to reconsider the merits of arbitration awards." S.D. Warren Co. v. United Paperworkers' Int'l Union, Local 1069, 845 F.2d 3, 7 (1st Cir.), cert. denied, 488 U.S. 992 (1988). The exceptions to this rule are few and far between. See Advest, Inc. v. McCarthy, 914 F.2d 6, 8 (1st Cir.1990) (limning exceptions); Bettencourt v. Boston Edison Co., 560 F.2d 1045, 1049 (1st Cir.1977) (similar). To make a long story short, a challenger must show that the award is "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact." Local 1445, United Food & Commercial Workers v. Stop & Shop Cos., 776 F.2d 19, 21 (1st Cir.1985). These exceptions are narrowly construed and, unless one of them applies, even "a court's conviction that the arbitrator made a serious mistake or committed grievous error will not furnish a satisfactory basis for undoing the decision." Advest, Inc., 914 F.2d at 9; accord Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 944 (1st Cir.1988).
 
 
 6
 As the district court recognized, the instant case does not fit within the confines of any of the three long-odds exceptions. The linchpin of the Union's position, as counsel made clear at oral argument, is that the arbitral award is irrational because the three grievants were all audited on the same day and only minor discrepancies were found in their stamp stock. Therefore, the Union's thesis runs, it is impossible that any of the trio could have stolen stamp stock (from which it follows that the arbitrator based his decision on facts that could not have been true).
 
 
 7
 To be sure, this is one possible interpretation of selected items of evidence. But the arbitrator faced a golconda of conflicting testimony regarding specific dates, and the Union has simply woven together the timeline most beneficial to its view of the universe. The arbitrator apparently chose a different timeline after hearing the witnesses and carefully considering the surrounding circumstances. The record supports a finding that Daniels was audited for the second time on Monday, April 16, 1990, when Davis was absent from work, and not on Tuesday, April 17; that Davis and Johnson were then audited the next day (April 17); and that, although no substantial amounts of stamp stock were found to be missing, some form of deception or sleight of hand was being practiced by the three clerks to hide the fact incontrovertibly proven that Davis had stolen as much as $6,000 by unauthorized withdrawals from his stock.
 
 
 8
 We add two further observations. First, even if the three grievants all had been audited on the same day as the Union contends, the arbitrator's conclusion of just cause for discharge would remain soundly based.[2] Second, while the exceptions we have described can take hold on a showing that the arbitral award was "mistakenly based on a crucial assumption that is concededly a non-fact," Advest, Inc., 914 F.2d at 8-9, that doctrine is limited to cases in which no competent evidence of an adjudicated fact appears in the record. The doctrine has no bearing where, as here, there is evidence both ways as to the pivotal facts.
 
 
 9
 We need go no further. Refined to bare essence, the Union's claim is that the arbitrator found the facts in a clearly erroneous manner, largely because he believed the "wrong" witnesses and credited the "wrong" bits of conflicting testimony. Even if this claim were well-founded and there is not very much in the record to suggest any egregious factual error we could not grant the requested relief. See International Bhd of Firemen & Oilers, Local 261 v. Great Northern Paper Co., 765 F.2d 295, 296 (1st Cir.1985) (explaining that "courts are precluded from interfering with arbitration awards for mere errors in assessing the credibility of witnesses"). It follows inexorably that we must uphold the district court's rejection of the Union's challenge to the arbitral award.
 
 
 10
 Affirmed. See 1st Cir. R. 27.1.
 
 
 
 [1]
 For ease in reference, we treat the case if the Union and the Service were the sole protagonists. In the circumstances at hand, the presence of other parties adds nothing of any consequence
 
 
 [2]
 The postmaster (Packard) sealed the safe containing the clerks' cash drawers on Saturday evening, April 14, and upon returning to work on Monday morning noticed signs of a break-in. When audits were conducted on Monday and Tuesday, Daniels and Johnson showed an unusual loss of large denomination stamps, while Davis had an inexplicable surplus of $2 stamps. Moreover, Johnson's fingerprints were found on seven sheets of stamps in Davis' stock. In May, postal inspectors determined that $1,153.30 of Johnson's stamp stock had originated from sources other than authorized postal channels. Given this and other evidence (including admissions by Daniels and Johnson), the arbitrator easily could conclude that the three clerks purchased stamps from outside sources to replenish Davis' stock prior to his audit. On that hypothesis, the three audits, even if conducted on the same day, would likely reveal no major discrepancies