**WONDERLAND GREYHOUND PARK, INC., et al., Plaintiffs,**

v.

**AUTOTOTE SYSTEMS, INC., a Delaware corporation (formerly known as Autotote Limited), Defendant.**

**No. Civ.A. 00–12077–JLT.**

United States District Court, D. Massachusetts.

May 10, 2001.

Kevin M. Considine, James W. Stetson, Boston, MA, for Plaintiffs.

Scott A. Roberts, Sullivan, Weinstein & McQuay, Boston, MA, David M. Olasov, Winick & Rich, New York City, for Defendant.

## MEMORANDUM

TAURO, District Judge.

### BACKGROUND

Plaintiffs, The Westwood Group, Inc. and Wonderland Greyhound Park, Inc. (collectively "Wonderland"), operate a greyhound race track in Massachusetts. Defendant, Autotote Systems, Inc. ("Autotote"), provides totalisator services to race tracks. A totalisator registers bets and computes the payoffs in pari-mutuel betting.

On or about August 30, 1991, Wonderland contracted (the "Contract") with Autotote for totalisator services at Wonderland's greyhound race track. The Parties executed three Amendments to the Contract. Only the Third Amendment is at issue here, but the first two amendments provide a context for the Parties' dealings.

The First Amendment occurred on or about April 2, 1992. It granted Autotote exclusive rights to provide on-track totalisator services, including intra-state and inter-state simulcast racing events. This First Amendment also extended the Contract's term for one additional year. Autotote agreed to pay one million dollars to Wonderland in consideration for these exclusive rights. Autotote claims that this million-dollar payment was an advance that Wonderland requested be characterized as an exclusive-rights purchase. The Second Amendment, which occurred on or about October 2, 1995, extended the term of services for an additional year.

The Parties executed a Third Amendment on or about February 1, 1999, extending services on live races and intra-state and inter-state simulcast races for an additional seven-year term (ending on September 25, 2005). This Amendment also required: (1) Autotote to provide upgraded self-service machines and customer-

tracking software; and (2) Wonderland to pay a weekly fee of $1,373.63 for video equipment rental over seven years, totaling $500,000.

Autotote failed to provide the updated self-service equipment and customer-tracking software under the Third Amendment. Wonderland served a notice of default on Autotote. Autotote failed to cure the default and Plaintiff terminated the contract effective June 13, 1999. Autotote then commenced arbitration alleging that Wonderland improperly terminated the contract.[1]

After completing depositions, the Parties appeared before an Arbitrator with the American Arbitration Association, as the Contract provided. On August 27, 2000, the Arbitrator issued an Award, finding that "Autotote's failure to supply the desired additions was a material breach of the 1991 contract as extended and amended."[2] But the Arbitrator also determined that the Contract was divisible and accelerated the $1,373.63 weekly equipment-rental payments that Wonderland was to pay Autotote over the next five years. That decision's net effect was to deem Wonderland as immediately owing Autotote almost $500,000, rather than the agreed upon weekly payout over seven years.

At issue is Wonderland's Motion to Vacate the Arbitrator's determination requiring Wonderland to pay Autotote a lump-sum amount for the money owed on the seven-year video-equipment rental, rather than installments as set forth under the

Third Amendment. Wonderland alleges that, in negotiating the Third Amendment, the Parties expressly bargained for and agreed that the seven year, weekly installment amount was a non-divisible element of an "entire" Contract. Wonderland further states that since Autotote's counsel drafted and produced the original Contract, and each Amendment and Extension, any ambiguity should be interpreted against Autotote. Wonderland states that Autotote insisted on the "Limitation of Remedies" clause, which Wonderland alleges the Arbitrator ignored.[3]

Wonderland claims that the Arbitrator ignored the plain language of the contract, specifically the Limitation of Remedies provision and the agreed remedy for breach clause. Wonderland further argues that the Award should be vacated because the Arbitrator acted in manifest disregard of the law. Wonderland states that by requiring an accelerated payment in a lump-sum amount now, Autotote will be in a better position than called for under the Amendment, i.e. the present use of almost $500,000 that it otherwise would have received piecemeal over a seven year period.

The Arbitrator ultimately directed Wonderland to pay Autotote the net principal sum of $477,790.84 before September 27, 2000, with interest accruing at 12% per annum, compounded monthly, commencing on September 28, 2000. Wonderland applied to the Arbitrator to modify the Award from a lump-sum payment to the

---

1. Autotote also included claims under 93A, common law fraud, bad faith representation and violation of the implied covenant of good faith and fair dealing.

2. (Arb.'s Mem. and Award at 8.).

3. Although not formally captioned "Limitation of Remedies," this clause provides: "The remedies expressly provided in this Agreement for breach thereof by AUTOTOTE or the OWNER shall constitute the sole and exclusive remedies to the aggrieved party, and all other remedies which might be otherwise available under the law of any jurisdiction are hereby waived by both AUTOTOTE and OWNER." (Pls.' Pet., Ex. A, Totalisator Servs. Agreement at § IV(O)).

seven-year weekly payment plan outlined in the Contract. In a two-page Memorandum issued on November 1, 2000, the Arbitrator denied Wonderland's Application for Reconsideration/Modification and upheld the lump-sum Award.

In this court, Autotote argues that Wonderland's right to challenge or modify that Award has been exhausted, and the Award is final and binding. Because Wonderland refused to pay the Award, Autotote seeks a judgment from this court confirming the Award.

## DISCUSSION

■ In reviewing arbitration awards, a district court's "review ... must be extremely narrow and exceedingly deferential."[4] This review is "highly deferential because the parties have contracted to have disputes settled by an arbitrator and thus, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept."[5] Furthermore, "[w]hile the arbitrator's award must draw its essence from the contract, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."[6]

■ An arbitration decision can be vacated either if federal statutory authority provides for it, or if the arbitrator acted in manifest disregard of the law.[7] Federal statutory law explicitly provides that a district court can vacate the award "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."[8]

Alternatively, a district court can vacate an arbitration decision if "[b]eyond the specific grounds enumerated in § 10 ... an award is contrary to the plain language of the [contract] and ... if it was made in manifest disregard of the law."[9] The issue before this court, therefore, is whether the Arbitrator acted in manifest disregard of the law or exceeded his authority.

■ In this Circuit, the determining test is:

[A] successful challenge to an arbitration award, apart from section 10, depends upon the challenger's ability to show that the award is (1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that

---

**4.** *Bull HN Information Systems, Inc. v. Hutson,* 229 F.3d 321, 330 (1st Cir.2000) (internal quotations omitted); *see also Wheelabrator Envirotech Operating Servs. Inc. v. Massachusetts Laborers Dist. Council,* 88 F.3d 40, 43 (1st Cir.1996).

**5.** *Bull,* 229 F.3d at 330 (internal quotations omitted); *Advest, Inc. v. McCarthy,* 914 F.2d 6, 8 (1st Cir.1990) ("non-reviewability remains the general rule—and exceptions are few and far between"); *Teamsters Local Union No. 42 v. Supervalu, Inc.,* 212 F.3d 59, 61 (1st Cir.2000); *Raytheon Co. v. Automated Bus. Sys., Inc.,* 882 F.2d 6, 9 (1st Cir.1989).

**6.** *Bull,* 229 F.3d at 330 (internal quotations omitted).

**7.** *See Prudential–Bache Sec., Inc. v. Tanner,* 72 F.3d 234, 237 (1st Cir.1995).

**8.** 9 U.S.C.A. § 10(a)(4). *Cf. Advest,* 914 F.2d at 8. ("The statute does not allow courts to roam unbridled in their oversight of arbitral awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in certain specific ways.").

**9.** *Bull,* 229 F.3d at 330–31 (internal quotations omitted); *Prudential–Bache Sec., Inc.,* 72 F.3d 234, 237; *Advest,* 914 F.2d at 8–9.

is concededly a non-fact.[10]

This test sets an extremely high bar before a court can determine that an arbitrator acted in manifest disregard of the law. Here, the Arbitrator did just that—finding that, although Autotote was the party in breach, it would receive an accelerated windfall payment of nearly $500,000.

The Arbitrator viewed Autotote's advance as a loan separate from the performance obligation of the Contract. Based on evidence presented at the hearing, the Arbitrator found that the timing of Wonderland's payment obligation was expressly tied to the term of the service contract, which called for a payment stream of $1,373.63 per week over seven years. The Arbitrator found that Wonderland's "election to terminate the service contract resultingly brought due the payment contract liability 'for a total payment of $500,000' in lieu of weekly payments over the stated term of the service contract."[11] At the same time, the Arbitrator found that the "divisible payment contract was a pure payment stream unrelated to the provision of services by [Autotote]."[12] In other words, the Arbitrator found that Wonderland owed Autotote $500,000 minus payments already tendered, and that this payment obligation was independent of Autotote's failure to provide the agreed upon services to Wonderland.

The terms of the Contract relating to the advance and installment payment are somewhat cryptic. But this court finds no basis anywhere for the Arbitrator's decision to accelerate Wonderland's payments to Autotote. The Arbitrator did not find Wonderland in breach of any agreement. Rather, he found Autotote in material breach and Wonderland within its rights to terminate the contract.[13] Yet, the Arbitrator accelerated Wonderland's obligation despite the fact that Autotote was the party in breach.

At a February 22, 2001 hearing, this court instructed Autotote to file a supplemental brief citing law supporting the Arbitrator's acceleration of Wonderland's obligation. In its brief, Autotote relies on *Parker v. Russell.*[14] *Parker* is inapposite. There, the court found that the contract at issue was totally violated because the defendant failed to perform.[15] But here the Arbitrator did not find Wonderland in breach. Rather, he found that Wonderland rightfully terminated the Contract due to Autotote's material breach. *Parker,* therefore, cannot support the Arbitrator's decision to accelerate payments of money that Wonderland owed to Autotote. This court finds that the acceleration here is "unfounded in reason and fact,"[16] amounting to confiscatory and unjustified punishment.

## CONCLUSION

Because no tenable ground exists for the acceleration, the Arbitrator's Award is vacated and the matter remanded to the Arbitrator for further proceedings consistent with this Memorandum. AN ORDER WILL ISSUE.

---

**10.** *Advest,* 914 F.2d at 8–9 (internal quotations omitted); *see Prudential–Bache Sec., Inc.,* 72 F.3d at 238; *Teamsters Local Union No. 42,* 212 F.3d at 66.

**11.** (Arb.'s Nov. 1, 2000 Mem. at 2.) (citing Arb.Mem. and Award at 9.).

**12.** (Arb.'s Nov. 1, 2000 Mem. at 2.).

**13.** (Arb.'s Mem. and Award at 8–9.).

**14.** 133 Mass. 74 (1882).

**15.** *See id.;* see also *Spring v. Geriatric Authority of Holyoke,* 394 Mass. 274, 475 N.E.2d 727 (1985) (distinguishing *Parker* ).

**16.** *Advest,* 914 F.2d at 8–9.

*ORDER*

The court hereby orders as follows:

(1) Plaintiffs' Petition to Vacate Arbitration Award [1] is ALLOWED;

(2) Defendant's Cross–Motion to Confirm Arbitration Award [3] is DENIED;

(3) Defendant's Motion for Writ of Trustee Process [6–1] is DENIED; and

(4) Defendant's Motion for Preliminary Injunction [6–2] is DENIED.

IT IS SO ORDERED.