DECISION
Before the Court is the State of Rhode Island's ("State") timely Motion to Vacate an Arbitration Award (G.L. 1956 § 28-9-21) and the Rhode Island Laborers' District Council's ("Union") timely Petition to Confirm the same (G.L. 1956 § 28-9-17). This controversy arises from allegations that a District Court employee discarded numerous legal documents which had been received by the court for filing. As a result of the allegations, the employee was terminated, and the Union initiated grievance proceedings on his behalf. On June 30, 2010, an arbitrator issued an award in favor of the Union, reinstating the Grievant employee to his position in the District Court Clerk's Office. Jurisdiction is pursuant to § 28-9-18.
 I Facts and Travel
James Patterson ("Mr. Patterson") was hired in April 1999 to serve as a Data Entry Operator in the Second Division District Court Clerk's Office. Approximately eight months later, he transferred to the Sixth Division District Court in Providence, where he continued to work as a Data Entry Operator. Mr. Patterson's duties "required him to receive documents that were filed by lawyers and litigants, date stamp the documents, record them on a docket sheet, *Page 2 
and place them in the appropriate case file." (American Arbitration Association Award Case No. 11 390 00893 09 ("Arbitration Dec.") at 2.)
The State and the Union were parties to a Collective Bargaining Agreement ("CBA"). That agreement was for the period of time extending from July 1, 2000 through June 30, 2004. The CBA states, in relevant part:
 ARTICLE II MANAGEMENT RIGHTS Section 2.1. Subject to the terms and conditions of this agreement, it is understood that the . . . Chief Judge of the District Court and Traffic Tribunal . . . shall have sole jurisdiction over the management of the operations of [his] respective Court[] as provided by law including, but not limited to . . . the right to hire, transfer, discipline or discharge for just cause, and lay-off because of lack of work or other legitimate reasons.
In the event an employee is dismissed, demoted, or suspended for just cause, the employee has the right to appeal such action pursuant to the grievance procedures enumerated under Article XXIV of the CBA. As a final alternative, the grievant may seek arbitration of the action. See CBA Article XXV.
Mr. Patterson was terminated from his employment with the State after a hearing on October 3, 2007. At that hearing, Mr. Patterson was given notice that the conduct in question was the "destruction and/or attempted destruction of documents filed with the court." (District Ct. Adm. Dec. at 1, Oct. 3, 2007.) District Court Administrator Joseph P. Ippolito determined that Mr. Patterson had been discarding various court documents during the period September 24-28, 2007. Id. In total, between 200 and 215 court documents were found in Mr. Patterson's wastebasket during the week he was under surveillance. Id.
A search of the recycle wastebasket revealed that the majority of documents discarded were "garnishee returns (most with zero balances) but other documents were also included."Id. *Page 3 
The other documents found in Mr. Patterson's wastebasket included, but were not limited to, "a deposition, plaintiff's answer to a defendant's interrogatories, a dismissal stipulation, and a document indicating how much money was withheld from an individual's wage." (Arbitration Dec. at 5.) Relying on video surveillance footage, court officials determined that no other employees were responsible for discarding court documents in Mr. Patterson's wastebasket. (District Ct. Adm. Dec. at 2.) Based on this evidence, District Court Administrator Ippolito concluded:
 Mr. Patterson engaged in a pattern of discarding court documents he was assigned to file. He did so without justification. Such actions were taken in willful disregard of the best interests of the Court, the reputation of its clerks, and the expectation of litigants and the public that all documents submitted to the court will be properly handled. . . . Consequently, I recommend James Patterson be dismissed from service with the District Court. Id. at 2.
The then District Court Chief Judge accepted and affirmed District Court Administrator Ippolito's decision on October 3, 2007. Following Mr. Patterson's termination, he initiated formal grievance proceedings which culminated in arbitration.
The State and the Union agreed that the issue before the arbitrator was whether the State had just cause to terminate Mr. Patterson, and if not, what the appropriate remedy should be. In considering the facts and circumstances giving rise to Mr. Patterson's termination, the arbitrator rendered the following analysis:
 [c]learly, if Mr. Patterson was aware that the documents were given to him for the purpose of docketing and filing, and he disposed of them rather than docketing and filing them, there would be just cause for his termination. Such action would constitute gross misconduct and would be grounds for immediate termination. Progressive discipline would not have to be followed in a case of such wanton and willful disregard of an employee's duties. On the other hand, if Mr. Patterson was authorized to throw out the documents, or had a reasonable belief that he was *Page 4 
authorized to throw out the documents, there would not exist just cause for his termination. (Arbitration Dec. at 14.)
With respect to whether Mr. Patterson was authorized to discard documents, the arbitrator considered the testimony of four State witnesses (two of whom had been Mr. Patterson's supervisors). All four witnesses testified "under no circumstances are [garnishee affidavits with zero balances] or any other documents submitted by litigants, to be thrown out." Id. at 15. Additionally, they explained that Mr. Patterson had the responsibility to file "all the papers that were mailed in" and that he had no discretion regarding his assignment to file court documents. Id. The arbitrator found that each of the State's four witnesses "were credible and clearly astonished to learn that Mr. Patterson" had been discarding court documents. Id.
Mr. Patterson testified in his own behalf. He admitted that he regularly discarded interrogatories and garnishee affidavits with zero balances, based on his belief that such conduct was permissible. (Tr. 304-05, Mar. 1, 2010; Arbitration Dec. at 16.) According to Mr. Patterson, Lynn Delfarno, a fellow clerk, told him that garnishee affidavits could be discarded because they were "useless documents." (Arbitration Dec. at 9.) Mr. Patterson later admitted that Ms. Delfarno had never worked in his department, that he was not sure if Ms. Delfarno held a supervisory position, and that Ms. Delfarno had been fired by the State for stealing.Id. In further support of his case, Mr. Patterson presented testimony of a former District Court employee as well as a current employee who indicated that employees were authorized to discard garnishee affidavits with zero balances. Id. at 16. Ultimately, the arbitrator determined that "the testimonies on behalf of Mr. Patterson [were] not considered strong and compelling." Id.
Notwithstanding his findings as to the credibility of each side's witnesses, the arbitrator held that the State failed to "clearly establish" that Mr. Patterson had been informed that he was not permitted to discard court documents and, thus, did not have just cause to terminate Mr. *Page 5 
Patterson. Id. at 17. Accordingly, the arbitrator ordered the State to reinstate Mr. Patterson with back pay and benefits.
The State contends that the award should be vacated because the arbitrator exceeded his authority by rendering an award which achieved an irrational result. The Union counters by arguing that the award of the arbitrator is based on a reasonable interpretation of the CBA, is entitled to the deference that courts customarily afford arbitration awards and, therefore, should be confirmed.
 II Standard of Review
"Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." Cityof East Providence v. Int'l Ass'n of Firefighters Local 850,982 A.2d 1281, 1285 (R.I. 2009). "Only in cases in which an award is so tainted by impropriety or irrationality that the integrity of the process is compromised should courts intervene." AetnaCas. Surety Co. v. Grabbert, 590 A.2d 88, 92 (R.I. 1991).
On appeal, this Court reviews arbitration awards in accordance with § 28-9-18(a), which requires the court to vacate an arbitrator's award in three specific circumstances. State Dep'tof Corrections v. Rhode Island Bhd. of Corr. Officers,867 A.2d 823, 828-29 (R.I. 2005); see also Rhode IslandCouncil 94, AFSCME, AFL-CIO v. State,714 A.2d 584, 589 (R.I. 1998). Only one of those three circumstances is at issue in the instant appeal: under § 28-9-18(a)(2), the court must vacate an award "[w]here the arbitrator or arbitrators exceeded their powers." State Dep't of Corrections, 867 A.2d at 828.
An arbitrator exceeds his powers "by resolving a non-arbitrable dispute or if the award fails to `draw its essence' from the agreement, if it was not based upon a `passably plausible' *Page 6 
interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result." WoonsocketTeachers' Guild, Local 951, AFT v. Woonsocket Sch. Comm.,770 A.2d 834, 837 (R.I. 2001) (quoting State Dep't of Children,Youth and Families v. Rhode Island Council 94,713 A.2d 1250, 1253 (R.I. 1998)).
 III Analysis
The State argues that the Court should vacate the award because the arbitrator exceeded his authority in reinstating Mr. Patterson. Specifically, the State contends that the award was irrational given the substantial evidence presented to demonstrate the seriousness of Mr. Patterson's conduct.
It is well-settled that "when a party claims that [an] arbitrator [has] exceeded [his] authority, the claimant bears the burden of proving this contention, and every reasonable presumption in favor of the award will be made." Coventry Teachers' Alliance v.Coventry Sch. Comm., 417 A.2d 886, 888 (R.I. 1980). Consequently, in determining whether the State has satisfied its burden of showing the arbitrator exceeded his authority, the issue before the Court is whether the arbitrator reached an irrational result in finding just cause did not exist to terminate Mr. Patterson. Seeid; Belanger v. Matteson, 346 A.2d 124, 138 (R.I. 1975) (suggesting an arbitrator's findings are reviewable when they are "completely irrational"); see also Advest,Inc. v. McCarthy, 914 F.2d 6, 8-9 (1st Cir. 1990).
In conducting the analysis, the Court begins — as did the arbitrator — with the premise that Mr. Patterson's termination was justified unless "[he] was authorized to throw out the documents, or had reasonable belief that he was authorized to throw out the documents." (Arbitration Dec. at 14.) The evidence established that Mr. Patterson worked for the District *Page 7 
Court since April 1999. His duties as a clerk "required him to receive documents that were filed by lawyers and litigants, date stamp the documents, record them on a docket sheet and place them in the appropriate case file." Id. at 2 The State's witnesses, including the District Court Administrator, his assistant, and two office supervisors, testified that it was understood that a clerk's job was to file all documents submitted by litigants, including, so-called zero balance garnishee affidavits, and that under no circumstances were any documents to be discarded.Id. at 15. The arbitrator expressly found the State's witnesses to be credible and held, based on their testimony, that the "only reasonable conclusion is that the procedure [they] testified to is the official procedure of the [Court]."Id. (Emphasis added.) Yet, despite the credence he attributed to the State's proof, the arbitrator, based on what he saw as the absence of evidence that any State's witness had "personally advised" Patterson of his obligation to file all documents or that Patterson had received written instruction to that effect, concluded that proof was lacking that Patterson "was ever given the instruction that he is accused of intentionally disregarding."Id. at 15, 17. Though mindful of the policy requiring deference be afforded arbitration awards, this Court is of the opinion that the facts and circumstances of this case compel a different outcome.
The record-keeping mandate of the District Court Clerk's office is codified at G.L. 1956 § 8-8-17.[1] In the view of this Court, the discarding of legal documents submitted to the court for filing is so incompatible with the role of a court clerk in the operation of the judicial system and *Page 8 
the maintenance of public confidence in the administration of justice as to render self-evident the expectation that such documents are submitted for safekeeping. In the context of this case, the perceived insufficiency of evidence that the Grievant, Mr. Patterson, received specific instructions that zero balance garnishee affidavits were not to be discarded provided no reasonable basis for the arbitrator to excuse Mr. Patterson's trashing them. The fallacious reasoning of the arbitrator is reminiscent of the reasoning of the arbitrator in State Dep't ofCorrections. See 867 A.2d 823. There, the arbitrator reinstated a Department of Corrections (DOC) employee fired for converting prison towels and blankets to his own use based on the absence of evidence that DOC ever instructed employees to treat these items "in any manner other than as disposable items to be used and discarded." Id. at 827. Our Supreme Court vacated the arbitrator's award as irrational. Id. at 830. The Court observed:
 [t]he towels and linens clearly were state property regardless of how [the employee] obtained possession of them. The fact that DOC lacked a specific policy prohibiting the use of MHRH linens does not equate with permission to remove the property from departmental premises. Id.
In any case, there existed ample evidence of record that the arbitrator either overlooked or chose to ignore that Mr. Patterson had been instructed and, in fact, was aware, that all documents, including zero balance garnishee affidavits, were required to be filed, not discarded.[2] It was abundantly clear from the testimony of District Court Administrator Ippolito that all clerk's office staff — Mr. Patterson included — received training as to office procedures upon being hired. (Tr. 77-78.) This was confirmed by the Civil Case Supervisor who noted that the procedures have not changed in the thirty years she has worked for the court. (Arbitration Dec. at 7.) Mr. Patterson did not deny receiving training, however informal, as to "official" *Page 9 
procedures relating to the docketing and filing of legal documents. He conceded that initially his practice was to file zero balance garnishee affidavits. (Tr. 291, 300-04.) He claims he began throwing them away only after being so instructed by another clerk.Id at 291. It follows from Mr. Patterson's own testimony that, in fact, he was aware, at least initially, of the requirement that all documents, including the garnishee affidavits in question, be docketed and filed; and that, at least initially, he performed his duties as required.
The thrust of the defense offered by the Union was that Mr. Patterson had been told by another clerk that zero balance garnishee affidavits should be discarded as useless, and that others in the office discarded them as well. The arbitrator characterized the testimony of Mr. Patterson and his witnesses as "not considered strong and compelling." The arbitrator noted, in discussing Mr. Patterson's testimony, Mr. Patterson's admission that the clerk who he claims advised him to discard the zero balance affidavits did not work on the civil case side of the Clerk's Office while he was there. (Arbitration Dec. at 9.) With respect to the testimony of Mr. Patterson's witnesses, the arbitrator commented:
 Ms. Hyatt is a personal friend of Mr. Patterson and no longer works for the court. Ms. Whitfield seems to have given a couple of differing versions of how the office is run. She also appears to have some personal animus toward [her supervisor, Ms.] Smith. Id. at 16.
In the Court's opinion, the suggestion inherent in the arbitrator's award that the conduct of Mr. Patterson, a clerk's office employee of eight and one-half years tenure, be excused on the grounds that he was never instructed that he should docket and file the legal documents in question or that he' reasonably believed he was authorized to discard them, is unreasonable, and irreconcilable with the arbitrator's own findings and assessment of the evidence. Consequently, the Court is constrained to intervene.Wheelabrator Envirotech Operating Services Inc. v. MassachusettsLaborers Dist. Council Local 1144, *Page 10 88 F.3d 40, 44 (1st Cir. 1996); UTGR, Inc. v. Mutuel/GamingClerks Union of R.I., Local 334, No. 09-046 S, 2009 WL 2436772, at *3 (D.R.I. Aug. 7, 2009) (holding that the court should refrain from intervening unless the award is "unfounded in reason and fact").
Also, it should not be overlooked that Mr. Patterson was terminated for discarding other legal documents in addition to zero balance garnishee affidavits. Among the approximately two hundred legal documents that the evidence revealed were discarded by Patterson during the one-week period he was under surveillance were a motion to adjudge in contempt, orders for entry, a dismissal stipulation, summonses, answers to interrogatories, and garnishee affidavits indicating positive balances. (State's Ex. 1 — 5, incl.) The Court finds it troublesome that this evidence escaped mention by the arbitrator in his analysis of whether or not Patterson acted in dereliction of his duties justifying his termination. This failure raises the prospect that the arbitrator overlooked that evidence and, in the eyes of the Court, further erodes the soundness and validity of his conclusion.
 Conclusion
For the reasons set forth above, this Court finds that the arbitrator effectively exceeded his authority in that he reached an irrational result. State Dep't of Corrections,867 A.2d at 828. Therefore, the State's Motion to Vacate the Arbitrator's Award is granted. Correspondingly, the Union's Petition to Confirm is denied.
Counsel shall present an appropriate order and judgment for entry.
[1] Section 8-8-17 states in relevant part:
[t]he clerk of each division of the district court shall:
 (1) Keep a docket, and an alphabetical index . . . of all actions, complaints, or proceedings, either of a civil or criminal nature, that may be entered or had in the division, and shall note in the docket against each case the decision or determination thereof, all subsequent proceedings, and the judgment therein. . . .
 (2) Record the decisions, judgments, and proceedings of the division in a book to be kept for that purpose or in an electronic information storage system or any other data compilation system.
 * * *
[2] Failure of a garnishee to account to the court by affidavit exposes the garnishee to liability for the entire judgment. G.L. 1956 § 10-17-15 *Page 1