29 F.3d 742
 146 L.R.R.M. (BNA) 2979, 128 Lab.Cas. P 11,141,
18 Employee Benefits Cas. 1585
 LABOR RELATIONS DIVISION OF CONSTRUCTION INDUSTRIES OF
MASSACHUSETTS, INC., et al., Plaintiffs-Appellees,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFERS,
WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL # 379,
Defendant-Appellant.
 No. 93-2122.
 United States Court of Appeals,
First Circuit.
 Heard March 11, 1994.
Decided July 19, 1994.
 
 Paul F. Kelly, with whom Anne R. Sills and Segal, Roitman & Coleman, Boston, MA, were on brief, for appellant.
 John D. O'Reilly III, with whom O'Reilly & Grosso, Southboro, MA, was on brief, for appellees.
 Before BREYER,* Chief Judge, COFFIN, Senior Circuit Judge, and TORRUELLA, Circuit Judge.
 TORRUELLA, Circuit Judge.
 
 
 1
 The circumscribed role of federal courts reviewing arbitration awards in labor contract disputes is now well established. As the Supreme Court found in United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36-45, 108 S.Ct. 364, 369-74, 98 L.Ed.2d 286 (1987), courts must resist the temptation to substitute their own judgment about the most reasonable meaning of a labor contract for that of the arbitrator and avoid the tendency to strike down even an arbitrator's erroneous interpretation of such contracts. Instead, courts must confine themselves to determining whether the arbitrator's construction of the contract was in any way plausible.
 
 
 2
 The issue in this case is whether any plausible reading of a collective bargaining agreement supports an arbitrator's ruling in a dispute over fringe benefit contributions. Plaintiffs-appellees, J.M. Cashman, Inc. and R. Zoppo Co., Inc. (the "plaintiffs" or "Cashman and Zoppo"), challenged the arbitration order, which favored the defendant-appellant, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of American, Local 379 (the "Union"), in the district court. The district court vacated the arbitration award and remanded the dispute to the arbitrator for a new resolution of the case. Because we find that the district court stepped outside of its highly circumscribed role of assessing the plausibility of the arbitrator's interpretation of the agreement between the parties, we reverse the court's holding. Nevertheless, we agree with the district court that the case should be remanded to the arbitrator for resolution of a related issue of federal law.
 
 I. BACKGROUND
 
 3
 This case arises out of the arbitration of a dispute between the Union and a group of contractor-employers, including plaintiffs Cashman and Zoppo, involved in the construction of waste water treatment facilities in Boston Harbor (the "Boston Harbor Project"). On March 2, 1992, the Union filed grievances against Cashman, Zoppo, and six other project employers, claiming that truck drivers on the Boston Harbor Project who owned and drove their own trucks, so called "owner-operators," should receive certain fringe benefit contributions that the employers were already paying on behalf of other Boston Harbor Project employees. The grievances asserted that the Boston Harbor Project Labor Agreement ("Project Agreement"), signed by the Union and the employers, required that the same "health and welfare contributions and all pension contributions" made on behalf of other employees must also be made on behalf of the owner-operators.
 
 
 4
 The employers claimed that they did not have to pay fringe benefits on behalf of owner-operators because the contract did not require it and, more importantly, because the Union and many of the employers had a long-standing practice of not paying such owner-operator benefits going back at least twenty-six years. According to the employers, this practice was established after the Union and certain employer-contractors on a number of state construction projects (not including Cashman and Zoppo themselves) agreed that, to the extent a nucleus of owner-operator truck drivers would be present on any individual construction project, the employers would not be required to pay fringe benefits for the owner-operators. The employers working on the Boston Harbor Project, who were required to sign the Project Agreement in order to bid initially on the work, see Building & Constr. Trades Council v. Associated Builders & Contractors, Inc., --- U.S. ----, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993), rev'g, 935 F.2d 345 (1st Cir.1991) (en banc), maintained that they expected this established practice to continue as in previous projects. Cashman and Zoppo, however, had never entered into a contractual relationship with the Union before the Boston Harbor Project. Consequently, no past practices had been established between the Union and the plaintiffs themselves.
 
 
 5
 Pursuant to the Project Agreement, the dispute over the fringe benefits was brought before an arbitrator for resolution. On January 20, 1993, the arbitrator found in favor of the Union and ordered the plaintiffs and the other employers to pay, retroactively, post-grievance benefits and to pay future fringe benefit contributions on behalf of the owner-operator truck drivers. In his accompanying opinion, the arbitrator explained that certain provisions of the Massachusetts Teamsters' Heavy Construction Agreement ("Teamsters Agreement"), which was incorporated into the Project Agreement, in conjunction with the Project Agreement itself, explicitly obligated employers to make health insurance and pension contributions on behalf of the owner-operators in question.
 
 
 6
 At issue in this appeal is the arbitrator's finding that the past practice of not paying the fringe benefits for owner-operators did not bind the parties in this case because the Project Agreement "wiped the slate clean" of such past practices. The arbitrator relied on the following language in the preamble of the Project Agreement to support his finding:
 
 
 7
 No practice, understanding or agreement between a Contractor and a Union party which is not explicitly set forth in this Agreement shall be binding on any other party unless endorsed in writing by the Project Contractor.
 
 
 8
 By interpreting this language as negating all past practices and understandings not explicitly set forth within the Project Agreement, the arbitrator disregarded the voluminous evidence presented by the employers of the established practice of excluding owner-operators from fringe benefit contributions. As a result, the language of the Project Agreement granting such benefits was found to be controlling.
 
 
 9
 Also at issue on appeal is the related question of whether the owner-operator truck drivers are independent contractors or employees. If they are independent contractors, Section 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Sec. 186, would prohibit fringe benefit payments on their behalf. The arbitrator acknowledged that the employers had argued that fringe benefit payments for the owner-operators would be illegal under Section 302, but he made no explicit legal or factual findings on the issue in his opinion. While a rejection of the employers' contention was implicit in the arbitrator's award favoring the Union, nothing indicates that the arbitrator actually determined whether the owner-operators were employees or independent contractors for purposes of the LMRA.
 
 
 10
 Following the entry of the arbitrator's award, Cashman and Zoppo filed a complaint in the district court on February 19, 1993, requesting that the court vacate the award. On summary judgment, the district court held that the arbitrator had impermissibly exceeded his authority by misapplying the plain and unambiguous language of the Project Agreement preamble concerning past practices, thereby failing to duly consider the evidence that the parties had a practice of not paying fringe benefits for owner-operators. The district court found that the past practices provision of the preamble--particularly the words, "no practice ... shall be binding on any other party" (emphasis added)--clearly and unambiguously meant that established practices between parties A and B are not meant to bind outside party C. The court found that the phrase could not reasonably be interpreted to mean that all established practices, even those between parties A and B, are completely wiped out by the Project Agreement. Consequently, the court held that the Union could still be bound by the past practice of not requiring fringe benefit contributions for owner-operators. The district court vacated the arbitrator's award and remanded the case to the arbitrator to determine the merits, giving proper consideration to the evidence of past practices.
 
 
 11
 The court also left for the arbitrator the issue of whether, in light of the court's holding that past practices could be considered, the owner-operators are independent contractors, thus rendering the payment of benefits on their behalf illegal.
 
 II. ANALYSIS
 A. Standard Of Review
 
 12
 It is well established that federal court review of labor arbitral decisions, particularly on matters of contract interpretation, is extremely narrow and "extraordinarily deferential." Dorado Beach Hotel Corp. v. Union de Trabajadores de la Industria Gastronomica Local 610, 959 F.2d 2, 3-4 (1st Cir.1992); see, e.g., Misco, 484 U.S. at 36-45, 108 S.Ct. at 369-74 (1987); Berklee College of Music v. Berklee Chapter of Mass. Fed. of Teachers, Local 4412, 858 F.2d 31, 32 (1st Cir.1988), cert. denied, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989). The court may not supplant the arbitrator's determination of the merits of a contract dispute, even if it finds that determination to be erroneous. Rather, the court's task is limited to determining if the arbitrator's interpretation of the contract is in any way plausible. Misco, 484 U.S. at 36-38, 108 S.Ct. at 369-71; United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960) ("[S]o far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."); El Dorado Technical Servs., Inc. v. Union General de Trabajadores de Puerto Rico, 961 F.2d 317, 319 (1st Cir.1992) ("[A] court should uphold an award that depends on an arbitrator's interpretation of a collective bargaining agreement if it can find, within the four corners of the agreement, any plausible basis for that interpretation."); Dorado Beach, 959 F.2d at 4; Bacardi Corp. v. Congreso de Uniones Industriales de Puerto Rico, 692 F.2d 210, 211 (1st Cir.1982). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Misco, 484 U.S. at 38, 108 S.Ct. at 371.
 
 
 13
 Only in a few, exceptional circumstances are courts able to vacate an arbitration award. When an arbitrator has exceeded his authority by ignoring the clear and unambiguous mandates or plain language of the contract or by construing the contract in a way that cannot possibly be described as plausible or rational, a court can overturn the arbitrator's judgment. Misco, 484 U.S. at 38, 108 S.Ct. at 371 (an arbitrator's award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice"); Dorado Beach, 959 F.2d at 4; Air Line Pilots Ass'n Int'l v. Aviation Assocs. Inc., 955 F.2d 90, 93 (1st Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 3036, 120 L.Ed.2d 905 (1992); Strathmore Paper Co. v. United Paperworkers Int'l Union, 900 F.2d 423, 426 (1st Cir.1990); Georgia-Pacific Corp. v. Local 27, United Paperworkers Int'l Union, 864 F.2d 940, 944 (1st Cir.1988).
 
 
 14
 We reject plaintiffs' contention that our review of the district court's vacation of an arbitration award, based on an alleged impermissible interpretation of a contract, is made under the clearly erroneous standard. In this case, all deference is due to the arbitrator's interpretation of the contract, not to the interpretation of the district court. The district court ruled that the arbitrator exceeded his authority as a matter of law by ignoring plain and unambiguous language in the contract. We review this finding de novo and make our own determination, according to the standards described above, of whether the arbitrator's application of the contract was plausible. See, e.g., Upshur Coals Corp. v. United Mine Workers, Dist. 31, 933 F.2d 225, 228 (4th Cir.1991); Delta Queen Steamboat Co. v. District 2 Marine Engs. Beneficial Ass'n, 889 F.2d 599, 602 (5th Cir.1989), cert. denied, 498 U.S. 853, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990); see also Berklee, 858 F.2d at 32-34 (vacating district court's reversal of arbitrator's interpretation of labor contract without affording deference to the district court's findings); Bacardi, 692 F.2d at 211-14 (implicitly applying de novo review in vacating district court's finding that arbitrator erroneously interpreted collective bargaining agreement).
 
 B. The Past Practices Clause
 
 15
 With this circumscribed standard for reviewing arbitration awards in mind, there is little question that the arbitrator's interpretation of the Project Agreement--at least to the extent that he found that the past practices clause bars consideration of the plaintiffs' evidence of prior fringe benefit arrangements--must be upheld as a plausible reading of the contract. This result is compelled because the arbitrator's holding comports with the district court's own interpretation of the past practices clause when properly applied to the facts of this case. Thus, even if the arbitrator exceeded his authority in finding that the past practices clause wiped the slate clean of all established practices between all parties, an issue we do not decide, he certainly did not exceed his authority by wiping the slate clean between the Union and the plaintiffs in this particular case.
 
 
 16
 The district court apparently failed to consider the possibility that plaintiffs in this case are "other parties" and therefore not privy to the past practice of excluding owner-operators from the payment of fringe benefits. According to the district court, the plain language of the past practices provision in the preamble provides merely that past practices established between parties A and B shall not be binding on party C, although they will continue to be binding on A and B themselves. Applying this interpretation to the present case reveals that fringe benefit practices between the Union and other employer-contractors (parties "A" and "B" respectively) are not binding on the plaintiffs (both party "C's"), who did not have an established past practice with the Union and are thus "any other parties" under the past practices clause. As a result, the contract could be read to require the arbitrator to ignore evidence of past practices between the Union and other parties when applying the provisions of the Project Agreement to disputes between the Union and the plaintiffs. Because such an interpretation is a plausible one, we must reverse the district court's vacation of the arbitration ruling with respect to the arbitrator's construction of the Project Agreement.
 
 
 17
 The plaintiffs take issue with such an application of the past practices clause to the facts of this case. They argue that because the Union itself was privy to the practice of not requiring fringe benefit payments for owner-operators, the Union can still be held to that practice, regardless of the fact that plaintiffs cannot in any way be bound by such a practice. Plaintiffs point to the language of the clause, which states that "[n]o practice ... between a Contractor and a Union party ... shall be binding on any other party," to argue that the clause itself concerns only the effects of past practices on new parties to the project agreement but in no way limits the effect of past practices on the Union itself.
 
 
 18
 The plaintiffs' interpretation is certainly reasonable, but, for our purposes, it is also irrelevant. Our task is to determine whether the arbitrator exceeded his authority by failing to apply the contract in a plausible manner, not to seek out the most reasonable meaning of the contract. Interpreting the past practices clause to bar consideration of plaintiffs' evidence of past practice in this case is clearly plausible. The clause can be read to preclude application of all established past practices to "any other party," even if that practice is in the "other party's" favor. Such a reading stems from one of several plausible constructions of the language in the clause: (1) no practice between parties A and B shall be binding between parties A and C; (2) practices not binding on party C are likewise unavailable to C for use against parties A or B (i.e., C is not entitled to rely on or benefit from a practice which is not binding on itself); and (3) no practice shall be binding unless already established between a Union and a particular contractor.
 
 
 19
 In this case, the arbitrator could plausibly find that the practice of excluding fringe benefits for owner-operators, established between the Union and other contractors, is not binding between the Union and the plaintiffs. Alternatively, the arbitrator could find that plaintiffs cannot benefit from the past fringe benefit practice because each plaintiff is an "any other party" and thus could not be bound by the practice were it beneficial to the Union instead of to the employer.
 
 
 20
 Plaintiffs protest that we cannot now employ such reasoning to retroactively salvage an otherwise unsustainable arbitration award. They point out that even if the Union's interpretation of the past practices clause is plausible, the arbitrator did not arrive at that interpretation himself, but instead, arrived at an interpretation that ignored the plain language of the contract. The arbitrator found that the past practices clause wiped the slate clean of all practices between all parties, not just practices between parties A and C as discussed above. The arbitration award cannot be upheld, plaintiffs argue, on the basis of an interpretation of the contract that the arbitrator did not even make, because, in this case at least, the arbitrator might have come to a different conclusion as to whether past practice evidence could be considered if he adopted the district court's interpretation of the past practices clause at the time of his decision.
 
 
 21
 We see no problem with upholding the arbitrator's decision on grounds or reasoning not employed by the arbitrator himself. To begin with, an arbitrator has no obligation to give his or her reasons for an award. Raytheon Co. v. Automated Business Sys., 882 F.2d 6, 8 (1st Cir.1989). Once an arbitrator chooses to provide such reasons, courts should upset the award, or remand for clarification, only when "the reasons that are given strongly imply that the arbitrator may have exceeded his or her authority." Randall v. Lodge No. 1076, 648 F.2d 462, 468 (7th Cir.1981); see also Cannelton Indus. v. District 17, UNWA, 951 F.2d 591, 594 (4th Cir.1991) (remanding portion of arbitration award because it may have been based on a grant of punitive, as opposed to compensatory, damages, in which case the award did not draw its essence from the contract). Absent a strong implication that an arbitrator exceeded his or her authority, the arbitrator is presumed to have based his or her award on proper grounds. Saturday Evening Post Co. v. Rumbleseat Press, Inc., 816 F.2d 1191, 1197 (7th Cir.1987); see also Chicago Newspaper Publishers' Ass'n v. Chicago WEB Printing Pressman's Union, 821 F.2d 390, 394-95 (7th Cir.1987) (" '[i]t is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract ... that the award can be said not to 'draw its essence from the collective bargaining agreement.' ' ") (quoting Ethyl Corp. v. United Steelworkers, 768 F.2d 180, 185 (7th Cir.1985)) (emphasis in original).
 
 
 22
 In this case, despite the arbitrator's allegedly erroneous reasoning, there is nothing to indicate the arbitrator exceeded his authority by not "arguably construing or applying the contract." Misco, 484 U.S. at 38, 108 S.Ct. at 371; see General Teamsters, Auto Truck Drivers & Helpers, Local 162 v. Mitchell Bros. Truck Lines, 682 F.2d 763 (9th Cir.1982) (upholding arbitrator for "doing the right thing for the wrong reason"). The arbitrator's interpretation of the past practices clause in the preamble as precluding the use of past practice evidence in determining plaintiffs' obligations under the Project Agreement is a plausible interpretation of the contract and as such, must be upheld. El Dorado, 961 F.2d at 319. The fact that the arbitrator's "wipe-the-slate-clean" construction of the past practices clause might indicate that the arbitrator exceeded his authority if he had applied that construction to other parties not present in this litigation does not mean that he might have exceeded his authority in this particular case. Rather, we know the arbitrator did not exceed his authority because his application of the past practice clause to the plaintiffs' claims drew its essence from the collective bargaining agreement. Therefore, we need not speculate how the arbitrator might have resolved this case had he considered the district court's construction of the contract language at issue.
 
 C. Section 302 of the LMRA
 
 23
 Unlike the dispute over the Project Agreement, the issue of whether fringe benefit contributions on behalf of the owner-operators is illegal under federal law does not involve the same type of circumscribed judicial review that we afford arbitration decisions grounded in interpretations of a contract. Although the arbitrator's factual findings regarding the status of the owner-operators under Section 302 of the LMRA, 29 U.S.C. Sec. 186, may deserve a certain amount of deference, the issue of illegality is ultimately one for federal court review. Misco, 484 U.S. at 42-43, 108 S.Ct. at 373. Given that a determination under Sec. 302 could have criminal consequences, the plaintiffs deserve a thorough judicial review of an arbitrator's decision as to this issue.
 
 
 24
 Neither party disputes that the plaintiffs' payment of fringe benefits on behalf of the owner-operators is illegal under Sec. 302 if the owner-operators are independent contractors rather than employees. The parties do disagree, however, on whether the issue was properly decided by the arbitrator and, if not, how the issue should now be resolved. The plaintiffs argue that the arbitrator did not properly decide the issue and that we, or the district court, should find that the owner-operators are independent contractors, effectively nullifying the arbitration award. The Union argues that the arbitrator correctly found that the owner-operators were employees and that we should uphold this finding.
 
 
 25
 The arbitrator did, at the very least, implicitly decide the Sec. 302 issue by granting an award in favor of the Union. However, we are not satisfied that the arbitrator conducted the appropriate statutory analysis for making the required factual determination of the owner-operator's status. Distinguishing between employees and independent contractors for purposes of the LMRA is governed by general principles of agency law. National Labor Relations Bd. v. Amber Delivery Serv., Inc., 651 F.2d 57, 60 (1st Cir.1981). Courts have spelled out a number of factors to be considered in making the determination of a party's status, including various indicia of the employer's "right to control" certain aspects of that party's work. Amber, 651 F.2d at 61; Construction, Bldg. Material, etc., Local No. 221 v. National Labor Relations Bd., 899 F.2d 1238, 1240 (D.C.Cir.1990); North Am. Van Lines, Inc. v. N.L.R.B., 869 F.2d 596, 599-600 (D.C.Cir.1989); H. Prang Trucking Co. v. Local Union No. 469, 114 L.R.R.M. 3617 (D.N.J.1983). Although the intent of the parties when they entered into a contractual relationship may be relevant to determining an employer's "right to control" or to other aspects of the agency test, no one factor is decisive. Todd v. Benal Concrete Constr. Co, 710 F.2d 581, 584 (9th Cir.1983), cert. denied, 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984); Amber, 651 F.2d at 61 (citing N.L.R.B. v. United Ins. Co, 390 U.S. 254, 258, 88 S.Ct. 988, 990, 19 L.Ed.2d 1083 (1968)). Rather, all of the incidents of the relationship between the employer and the alleged employee must be assessed. Amber, 651 F.2d at 61.
 
 
 26
 Given the arbitrator's exclusive focus on the past practices issue and on provisions of the contract dealing with fringe benefit contributions, we have serious doubts that the arbitrator actually conducted a proper Sec. 302 agency test analysis in this case. There is no reason to believe, as the Union seems to suggest, that the arbitrator's decision regarding the past practices clause, which we uphold in this opinion, is dispositive not only of the underlying contractual dispute, but of the Sec. 302 issue as well. Past practices are only one facet of the complete agency test under Sec. 302. Consequently, the arbitrator's discussion of the Project Agreement and the import of past practices concerning the owner-operators, while relevant to the parties' intended working relationship and thus to the status of the owner-operators in this case, is not itself sufficient to convince us that a complete Sec. 302 agency test analysis was undertaken. We cannot, therefore, defer to the arbitrator's implicit factual finding on the owner-operators' status to uphold the arbitration award until a more complete Sec. 302 analysis is conducted.
 
 
 27
 We are not prepared, however, to conduct that analysis ourselves without first giving the arbitrator the opportunity to reexamine the factual circumstances of this case. Plaintiffs asserted in their action before the district court that the arbitration award is unenforceable because it violates federal law. The district court declined to review this claim because the court vacated the arbitration award on the issue of past practices. Because we now reverse the district court's ruling, we are left with plaintiffs' Sec. 302 allegations, which have yet to be properly adjudicated. In turn, we are not disposed toward making factual findings in the first instance, given the absence of explicit factual findings from the district court or the arbitrator, that are required for a proper determination of the owner-operators' status. Although a largely uncontradicted record exists in this case that would allow us to resolve the Sec. 302 issue if we needed to, we consider ourselves too far removed from the dispute to properly weigh the various factors involved in this fact-intensive determination. In other words, we refuse to uphold the arbitrator's finding because plaintiffs have raised a claim meriting federal judicial review yet we, as a federal appeals court, are not in a suitable position to conduct that review.
 
 
 28
 Unfortunately, the district court is in the same position that we are in with respect to determining the status of owner-operators. Consequently, we decline to remand the case directly to the district court for a resolution of the Sec. 302 issue. The district court itself chose to remand the proceedings instead of deciding the merits of the case and we think it is the court's prerogative to do so. Although federal courts have a duty to scrutinize such federal issues with potential criminal consequences, the arbitrator can play an important role in providing first-hand factual findings for the benefit of the reviewing court. Therefore, we remand this case to the arbitrator for a separate determination of the status of the owner-operators under Sec. 302.
 
 
 29
 The plaintiffs do not dispute our authority to remand actions to the arbitrator; however, they claim it is inappropriate to do so when the issue on remand is one of federal law. We disagree with their contention that it is inappropriate for an arbitrator to apply federal statutes. On the contrary, it is well established that certain statutory claims may be decided through arbitration. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991); Page v. Moseley, Hallgarten, Estabrook & Weeden, Inc., 806 F.2d 291, 295 (1st Cir.1986). We see no reason why the arbitrator cannot make the factual findings necessary to resolve the Sec. 302 issue in this case. Determining the status of owner-operators is particularly within the arbitrator's domain since it involves analyzing various aspects of the working relationship between the parties. Such a determination involves consideration of precisely the type of issues that the parties originally agreed to refer to the arbitrator under the arbitration clause of the Project Agreement. We do, nevertheless, retain jurisdiction so that the district court can review the final determination of the arbitrator, if requested to do so by one of the parties.
 
 
 30
 On remand, we expect the arbitrator will conduct the appropriate agency test analysis as described in the relevant caselaw. See, e.g., Amber, 651 F.2d at 60-61; Local No. 221, 899 F.2d at 1240; North Am. Van Lines, 869 F.2d at 599-600; Prang, 114 L.R.R.M. at 3617-19; see also Restatement (Second) of Agency Sec. 220 (1957). We leave it to the arbitrator to decide what effect, if any, the past practices clause of the Project Agreement and the evidence of past practice regarding the treatment of owner-operators has on his determination of the owner-operators' status under Sec. 302. Although we upheld the arbitrator's interpretation of the contract as barring consideration of past practices in resolving contractual disputes, we express no opinion on how the past practices clause in the contract and the evidence of past practices figure into the various factors enumerated under the agency test used to ascertain a party's status under Sec. 302.
 
 
 31
 Accordingly, we reverse the district court's judgment vacating the arbitration award and remand this case to the district court with instructions to remand the case to the arbitrator for further proceedings consistent with this opinion.
 
 
 
 *
 Chief Judge Stephen Breyer heard oral argument in this matter but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. Sec. 46(d)