# United States Court of Appeals
## For the First Circuit

No. 17-2014

DIALYSIS ACCESS CENTER, LLC; JUSTO GONZÁLEZ-TRÁPAGA, M.D.;
NANCY ROIG-FLORES,

Plaintiffs, Appellants,

v.

RMS LIFELINE, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Thompson, Circuit Judges.

Bámily López-Ortiz, with whom López Toro and Lizabel M.
Negrón-Vargas were on brief, for appellants.
José Luis González-Castañer, with whom Roberto Ariel
Fernández-Quiles and González Castañer, PSC were on brief, for
appellee.

August 1, 2019

**THOMPSON**, **Circuit Judge**. Before us once again are Dialysis Access Center (a Puerto Rico LLC) ("DAC"),[1] and RMS Lifeline, Inc. (a Delaware corporation)("RMS"), the central players in a years-long and much-papered dispute.[2] Having previously been sent by this court to arbitrate their disputes, Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 371 (1st Cir. 2011) (Dialysis I), DAC and RMS are back -- this time with DAC contesting soup-to-nuts the arbitrator's decision in RMS's favor and the district court's refusal to vacate it. Finding no error, we conclude that the district court was correct in rebuffing DAC's challenge, so we affirm.

## BACKGROUND

We lay out the basics pertinent to the latest installment of this arbitration-fueled litigation. DAC is a Puerto Rico-based company that focuses on providing vascular intervention and access services to dialysis and kidney failure patients, and RMS specializes in managing and operating centers like DAC. In 2007, DAC and RMS entered into a management services agreement (the

---

[1] DAC's members are: Dr. Justo González-Trápaga; his wife, Nancy Roig-Flores; and two other doctors/minority shareholders who need not be listed because they settled during arbitration. For the sake of clarity and simplicity, and because the parties advance the same appellate contentions, we refer to them collectively as DAC.

[2] By way of background, diversity is the basis for jurisdiction here.

"MSA") for the development, building, management, and operation of a vascular access center in Mayagüez, Puerto Rico.

The MSA's provisions most relevant to this appeal are these: section 12.1, "Termination by Either Party for Cause" (laying out the procedure for terminating the MSA, specifically, notice of a breach, an opportunity to cure the breach, and, ultimately, termination of the MSA by the non-breaching party if cure could not be effected within sixty days of notice given); section 13.3, "Governing Law" (the choice-of-law provision instructing that the Commonwealth of Puerto Rico's substantive laws would apply to the MSA); and section 13.9, "Dispute Resolution/Arbitration" (requiring the parties' exhibition of good faith in the resolution of any dispute arising under the agreement, and, if no agreed upon resolution could be reached, submission to binding arbitration under the rules of the American Health Lawyers Association (the "AHLA")).

During the term of the MSA, the relationship between the parties apparently soured, and numerous imbroglios arose between DAC and RMS about their respective obligations under the agreement. Those disputes set into motion this multi-year litigation about, among other things, the parameters of the arbitration requirement.

Indeed, that question brought these parties before this court nearly a decade ago (in 2010). Dialysis I, 638 F.3d at 373-74. In that first go-round, we, like the district court, found

the disputes arbitrable and directed the parties to arbitrate their beef before the AHLA.  Id. at 383-84.

Once there, claims, counterclaims, and crossclaims abounded.  Everything from fraud in the inducement to fraud in the performance to the ultimate breach of the MSA was put before the arbitrator.[3]  After months of intermittent arbitration sessions, in July of 2013, the arbitrator issued a final decision in favor of RMS awarding it a grand total of $1,969,068.68, which covered damages, extra liability for *dolo* exhibited by DAC,[4] prejudgment interest, costs, attorneys' fees (from the arbitration and the pre-arbitration litigation), as well as credits for the settlements by the other two doctors.  We'll discuss the award more in due course as its many contested aspects come up in the course of the parties' appellate contentions.

DAC next turned to the federal district court in Puerto Rico, where it filed a complaint (treated by the lower court as a

---

[3]  Since the particulars of those arguments aren't central to our analysis of the issues on appeal, we need not dive into them here.  Instead, we direct the interested reader to the magistrate judge's report and recommendation, which provides more information regarding the parties' arbitral contentions.  See Dialysis Access Ctr., PLLC v. RMS Lifeline, Inc., No. CV 13-1796 (PAD), 2017 WL 3579706, at *1 (D.P.R. May 31, 2017), report and recommendation adopted sub nom. Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., No. CV 13-1796 (PAD), 2017 WL 3602012 (D.P.R. Aug. 22, 2017).

[4]  Puerto Rico law explains that "*dolo*" occurs "when by words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without them he would not have made."  P.R. Laws Ann. tit. 31, § 3408.

motion -- "[DAC] now move[s] the Court") seeking to vacate or modify the arbitration award, primarily arguing that the arbitrator exceeded his powers, misapplied the law on parol evidence, engaged in misconduct in evaluating the evidence (with respect to *dolo* in contract formation, novation, and breach), and disregarded Puerto Rico's law regarding damages. RMS opposed what it deemed a "groundless" contestation of the arbitrator's award in a motion and supporting brief requesting enforcement of the award.

The magistrate judge who handled the matter analyzed the parties' claims under the Federal Arbitration Act (the "FAA"), and found that not only did DAC fail to demonstrate why the award should be vacated, but also, that the arbitrator's thorough decision was both supportable and well-reasoned. Therefore, with DAC not having evinced any misconduct or manifest disregard of the law by the arbitrator, or that his handling of the case exceeded his powers, the magistrate judge recommended that DAC's complaint be denied.

DAC filed timely objections to the magistrate judge's report and recommendation, taking a three-pronged aim at what DAC says was error: her failure to hold a hearing as required by the Puerto Rico Arbitration Act (the "PRAA"), her use of the wrong standard of review, and her failure to consider all of DAC's evidence and arguments. RMS, unsurprisingly, opposed those objections. After reviewing the written submissions, the district

court sided with the magistrate judge and rejected DAC's arguments -- no hearing was required; the FAA applied to the controversy; and the magistrate judge did, in fact, examine and evaluate each of DAC's contentions.  Therefore, concluding that the magistrate judge's findings and conclusion were well supported, the district court adopted the magistrate judge's report and recommendation in full, dismissed the complaint to vacate and/or modify the arbitration award, and confirmed the award.

The saga now continues as DAC asks us to upend the district court's refusal to vacate the arbitrator's award.

## DISCUSSION

Before us, DAC advances a variety of arguments to support its position that the arbitrator's award should be vacated.[5] Regrettably, DAC's briefing is -- shall we say -- not exactly a beacon of clarity.  But, as best we can distill, its arguments, as we understand them, fall chiefly into two main baskets:  (1) the

---

[5]  Quick note:  although DAC's assorted paper submissions both to the court below and to us have packaged its challenge to the arbitrator's award as a request for the award to be vacated or modified, in actuality, DAC's analysis focuses entirely on vacatur -- document titles and brief heading lines aside, the sole mention of modification in its briefing before this court is a throwaway line at the end of its opening brief contending that the lower court should have "at the very least" modified the arbitrator's award.  But because there is no legal support offered for this assertion and not even a slight effort at developed argumentation, any argument with respect to modification of the arbitration award is deemed waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (treating arguments not developed on appeal as waived).

- 6 -

PRAA, not the FAA alone, should have governed the district court's standard of review of the arbitration decision; and (2) three errors compel the vacating of the award, specifically (a) the arbitrator engaged in misconduct when he refused to consider, or even allow certain evidence; (b) the arbitrator exceeded his powers in his awards of attorneys' fees and prejudgment interest, as well as in how he calculated damages; and (c) the arbitrator manifestly disregarded the law on *dolo*.[6]  RMS disagrees and we will lay out RMS's responses to DAC's arguments section by section as necessary.

We review the district court's decision to confirm or vacate an arbitration award de novo, Ortiz-Espinosa v. BBVA Sec. of P.R., Inc., 852 F.3d 36, 47 (1st Cir. 2017) (citing Cytyc Corp. v. DEKA Prods. Ltd. P'ship, 439 F.3d 27, 32 (1st Cir. 2006)), but in undertaking that review, we are cognizant that "[a] federal court's authority to defenestrate an arbitration award is extremely limited," Mt. Valley Prop., Inc. v. Applied Risk Servs., Inc., 863 F.3d 90, 93 (1st Cir. 2017) (quoting First State Ins. Co. v. Nat'l Cas. Co., 781 F.3d 7, 11 (1st Cir. 2015)).

### 1.  The PRAA and the FAA

We begin with the first issue DAC presents:  whether the

---

[6]  In addition to what we've organized into the aforementioned baskets, DAC makes a number of arguments founded in and on substantive Puerto Rico law.  We are not ignoring those arguments, but based on our analysis and limited review, we have no reason to tackle them.

lower court erred in applying only the FAA's more limited standard of judicial review to this dispute. We note that the FAA applies to "a contract evidencing a transaction involving [interstate] commerce," Ortiz-Espinosa, 852 F.3d at 42 (quoting 9 U.S.C. § 2), and neither DAC nor RMS dispute that theirs was such a transaction. That said, parties are free to contract around the application of the FAA in favor of state arbitration law, Hall St. Assocs. v. Mattel, Inc., 552 U.S. 576, 590 (2008), such as the PRAA, which we've described as providing a "more searching" standard of review, see P.R. Tel. Co. v. U.S. Phone Mfg. Corp., 427 F.3d 21, 29 (1st Cir. 2005), abrogated on other grounds by Hall St., 552 U.S. at 583 n.5, 584. Indeed, the Hall Street Court explained that "[t]he FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable." 552 U.S. at 590. "Parties are generally free to structure their arbitration agreements as they see fit," and "[j]ust as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted." Volt Info. Scis., Inc. v. Bd. of Tr., 489 U.S. 468, 479 (1989) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)); see also Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57-58 (1995). However, in order to effectuate

- 8 -

FAA displacement, our circuit has been clear that such can occur "only if the parties have so agreed explicitly." Ortiz-Espinosa, 852 F.3d at 42 (citing Hall St., 552 U.S. at 590).

Before this court, DAC says that's precisely what happened here. As DAC sees things, "the parties expressly agreed" in the MSA that Puerto Rico law would control by including a choice-of-law provision (section 13.3) which specifies the MSA is to "be construed in accordance with the internal substantive laws of the Commonwealth of Puerto Rico." Therefore, according to DAC, this provision makes applicable the PRAA's enforcement standards. DAC insists, then, that the district court should have conducted its review of the arbitrator's decision in the same way the Puerto Rico Supreme Court allegedly would have done. Specifically, and citing to Constructora Estelar v. Autoridad de Edificios Publicos, 183 D.P.R. 1 (2011), DAC says the district court should have undertaken a review more akin to a judicial review of an administrative agency decision, which permits some greater scrutiny of the merits of the award. Because that did not happen, DAC contends that the district court committed legal error.

RMS sees things differently. For one thing, because DAC advanced this argument for the first time only after the magistrate judge issued her report and recommendation, RMS says the argument

is waived.[7]  Even if waiver could be surmounted, RMS posits that DAC should be judicially estopped from making this PRAA argument because DAC previously argued before this court in Dialysis I that the FAA governed the case.  And, in any event, RMS contends that the parties never explicitly agreed to have the PRAA apply to the proceedings.

Because we can dispose of DAC's challenge based on our case law, we need not get into RMS's waiver and judicial estoppel arguments, instead assuming favorably to DAC that its asseverations are properly before us.  We find that the FAA correctly was applied here.  To prevail, DAC needed to show that the parties explicitly agreed to have the PRAA displace the FAA.  See Ortiz-Espinosa, 852 F.3d at 42 (applying the FAA when claimants failed to demonstrate that the parties had explicitly contemplated enforcement under the PRAA).  But as was the case in Ortiz-

---

[7]  Our review of the record reveals that DAC mentions the PRAA once in its complaint to vacate (listing the PRAA grounds for vacatur before also providing the FAA grounds for vacatur).  The magistrate judge denied the complaint to vacate, making no mention of the PRAA -- meaning she must not have interpreted DAC's single mention of the PRAA as grounds for its application.  In its objection to the report and recommendation, DAC upped the ante on its PRAA stance, arguing that the magistrate erred in "limit[ing] the inquiry only to the Federal Arbitration Act," and also erred by failing to hold a hearing, as the PRAA supposedly requires.  In adopting the magistrate judge's report and recommendation, though, the district court rejected those arguments.  It first noted that contrary to DAC's assertions the PRAA does not require a hearing.  Then it declined to specifically indicate whether the PRAA displaced the FAA because DAC never bothered to explain why it would win under a PRAA standard of review.

Espinosa, that showing has not been made.  Although DAC tries to win this argument by pointing to the MSA's choice-of-law provision, we have clearly instructed that such a general, contractual provision is not enough.  In Puerto Rico Telephone Co., we framed the question before the court like this:  "At issue is whether and how parties can contract for standards of judicial review of arbitration awards other than those set forth in the Federal Arbitration Act . . . ."  427 F.3d at 23.  And our answer:

> [T]he mere inclusion of a generic choice-of-law clause within the arbitration agreement is not sufficient to require the application of state law concerning the scope of review, since there is a strong federal policy requiring limited review . . . [A] generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties intended to opt out of the FAA's default regime for vacatur of arbitral awards.

Id. at 29 (internal quotations and citations omitted).

Given our case law, we reiterate -- a general choice-of-law contract provision is not enough to displace the FAA's standard of review; having failed to show an explicit agreement to have the MSA enforced under the PRAA and not the FAA, DAC's argument fails.

## 2. Vacatur

Turning to the laundry list of reasons why DAC believes the arbitral award should be vacated, we spy no error in the district court's decision declining to vacate (and instead confirming) the arbitrator's award.  Before we get into the

specifics of these arguments, though, we set out some additional parameters for our review, which, as we've already said, "is extremely narrow and exceedingly deferential."  Ortiz-Espinosa, 852 F.3d at 47-48 (quoting Raymond James Fin. Servs., Inc. v. Fenyk, 780 F.3d 59, 63 (1st Cir. 2015)); see also Teamsters Local Union No. 42 v. Supervalu, Inc., 212 F.3d 59, 61 (1st Cir. 2000) ("Arbitral awards are nearly impervious to judicial oversight.").

First, we note that the FAA offers very limited reasons to vacate an arbitration award.  The grounds include only the following:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

See 9 U.S.C. § 10(a).

And we are mindful that, in reviewing an arbitration award under the FAA, "[w]e do not sit as a court of appeal to hear claims of factual or legal error by an arbitrator or to consider the merits of the award."  Asociación de Empleados del E.L.A. v. Unión Internacional de Trabajadores de la Industria de

- 12 -

Automóviles, 559 F.3d 44, 47 (1st Cir. 2009) (quoting Challenger Caribbean Corp. v. Union Gen. de Trabajadores de P.R., 903 F.2d 857, 860 (1st Cir. 1990)); see also Advest, Inc. v. McCarthy, 914 F.2d 6, 8 (1st Cir. 1990) (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).

Indeed, our limited review applies "[e]ven where such error is painfully clear, [because] courts are not authorized to reconsider the merits of arbitration awards." Advest, 914 F.2d at 8 (quoting S.D. Warren Co. v. United Paperworkers' Int'l Union, Local 1069, 845 F.2d 3, 7 (1st Cir. 1988)). And the burden is on DAC to establish that the arbitrator's award should be set aside. See Ortiz-Espinosa, 852 F.3d at 48 (citing JCI Commc'ns, Inc. v. Int'l Bhd. of Elec. Workers, Local 103, 324 F.3d 42, 51 (1st Cir. 2003)).

As we mentioned, DAC appears to advance a few subsection (3) and (4) theories and an additional common law theory as to why vacatur of the arbitrator's award is necessary here: (a) the arbitrator engaged in misconduct in "impermissibly eschew[ing]" certain evidence; (b) the arbitrator exceeded his powers in his awards of attorneys' fees and prejudgment interest and in his calculation of damages; and (c) the arbitrator manifestly disregarded the law on *dolo*. The ins and outs of the parties' arguments and our take on each follow.

- 13 -

### a. Arbitrator's conduct in evaluating evidence

Drilling down, DAC argues that the arbitrator is guilty of misconduct because he refused to hear or "simply ignored" certain evidence DAC presented (or wanted to present) regarding, *inter alia*, *dolo*, breach of the MSA, and novation, which if considered would have, with certainty, caused the arbitrator to enter an award for DAC.[8] DAC goes on to say that the arbitrator's refusal to hear its evidence "prejudiced [DAC]'s rights to such an extent that it could be considered that they were deprived of a fair hearing."

RMS responds that there was no arbitrator misconduct in this regard because, even if he did err (RMS says he didn't -- he heard all the evidence, even explaining why the extrinsic evidence barred by the parol evidence rule wouldn't have changed his decision), this supposed evidentiary error would not be a valid ground to overturn an arbitration award under the FAA.

The FAA "does not require arbitrators to consider every piece of relevant evidence presented to them." Doral Fin. Corp.

---

[8] DAC's list of evidence it says was ignored: "(a) Arbitrator's refusal to consider Plaintiffs' evidence in support of a finding of *"dolo" in the consent* during the formation of the contract; (b) Arbitrator's refusal to consider evidence to establish that RMS was the party that originally breached the agreement – *Exceptio Non Adimpleti Contractus*; (c) Arbitrator's refusal to consider evidence on *Novation* of the MSA." In addition to that list, at times throughout its brief, DAC also argues there were certain undisputed facts or admissions by RMS that the arbitrator failed to consider.

v. García-Vélez, 725 F.3d 27, 31 (1st Cir. 2013). And for our part, we will vacate an award only when the arbitrator's refusal to consider disputed evidence is "in bad faith or so gross as to amount to affirmative misconduct." United Paperworkers Int'l Union, 484 U.S. at 40. "Vacatur is appropriate only when the exclusion of relevant evidence so affects the rights of a party that it may be said that he was deprived of a fair hearing." Ortiz-Espinosa, 852 F.3d at 49 (quoting Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901, 763 F.2d 34, 40 (1st Cir. 1985)).

On appeal, DAC never actually asserts that the arbitrator's conduct regarding this purportedly slighted evidence was done "in bad faith or so gross as to amount to affirmative misconduct," United Paperworkers Int'l Union, 484 U.S. at 40, nor does it tell us why exactly the arbitrator's conduct amounted to deprivation of a fair hearing, as required, Ortiz-Espinosa, 852 F.3d at 49. So given its failure to make these arguments, even if we assume, as DAC asserts, that the arbitrator refused to consider some of its proffered evidence, as we have already noted, he was not required to do so. Doral Fin. Corp., 725 F.3d at 31.

But there is more. Contrary to DAC's assertions, it is clear from the arbitrator's extensive and detailed findings of fact that much of the evidence DAC claims was ignored was in fact heard and considered by the arbitrator. What DAC's gripe really

comes down to is the weight given to that evidence by the arbitrator. And on that front we have made pellucid that it is not our place to chime in on the weight allotted to any given piece of evidence submitted to the arbitrator, see, e.g., Asociación de Empleados del E.L.A., 559 F.3d at 47 (instructing that "[w]e do not sit as a court of appeal to hear claims of factual or legal error by an arbitrator or to consider the merits of the award"), and DAC has shown us no reason why the arbitrator's weighing of the evidence here warrants vacatur, Hoteles Condado Beach, 763 F.2d at 39-40 (noting that unless exceptional circumstances are in play, "a reviewing court may not overturn an arbitration award based on the arbitrator's determination of the relevancy or persuasiveness of the evidence submitted by the parties").[9] We see no arbitrator misconduct.

Onward.

### b. Attorneys' fees, interest, and damages award

DAC also asserts that the arbitrator exceeded his powers

---

[9] As for the parol evidence argument DAC advances -- that the arbitrator engaged in misconduct by deploying the parol evidence rule to exclude certain extrinsic contract formation evidence -- it suffers from a fatal flaw. In an exercise of "even-if" thoroughness, the arbitrator did consider that evidence. But he concluded it wouldn't change his mind, then offered seven detailed reasons why that was so. Thus, having taken the extra step of weighing and dismissing the evidence DAC is hung up on, the arbitrator did not engage in any misconduct -- he instead made it all the more clear that the evidence being pushed by DAC did not make for a winning hand.

- 16 -

in awarding attorneys' fees and prejudgment interest and in his calculation of damages.  RMS responds by stating that the MSA itself authorizes an award of attorneys' fees and costs, as do the AHLA rules.

Like DAC's first theory for vacatur, this one too, faces a high bar:  "[a]bsent a strong implication that an arbitrator exceeded his or her authority, the arbitrator is presumed to have based his or her award on proper grounds."  Labor Relations Div. of Constr. Indus. v. Int'l Bhd. of Teamsters, Local #379, 29 F.3d 742, 747 (1st Cir. 1994).  And we call to mind the maxim that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."  United Paperworkers Int'l Union, 484 U.S. at 38.

### i.  Attorneys' fees and prejudgment interest

We begin by considering DAC's argument with respect to attorneys' fees and prejudgment interest.  Again pointing to the MSA choice-of-law provision, DAC says that both of these awards were in excess of the arbitrator's powers because Puerto Rico law simply does not allow for them.   Even if we presume that DAC is correct on that front, DAC nevertheless loses.  In reaching this conclusion, Mastrobuono, 514 U.S. 52 (1995), animates our thinking.  There, the Supreme Court addressed a similar issue:

"The question presented is whether the arbitrators' award [of punitive damages] is consistent with the central purpose of the Federal Arbitration Act to ensure 'that private agreements to arbitrate are enforced according to their terms.'"  Id. at 53-54 (quoting Volt, 489 U.S. at 479).

The Mastrobuono litigants had entered into a standard-form securities client's agreement which contained both a New York choice-of-law provision and an arbitration provision pursuant to the National Association of Securities Dealers ("NASD").  Id. at 54-55.  The NASD rules allowed for the award of punitive damages, but New York law did not grant arbitrators (as opposed to judicial officers) the authority to do so.  Id. at 62.  Noting a "cardinal principle of contract construction [--] that a document should be read to give effect to all its provisions and to render them consistent with each other" -- the Court upheld the arbitrator's award of punitive damages, finding them to be within the scope of the parties' contract.  Id. at 63 (collecting cases).

> We think the best way to harmonize the choice-of-law provision with the arbitration provision is to read "the laws of the State of New York" to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators.  Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other.

Id. at 63-64.

Applying that same logic here, it follows that the MSA's choice-of-law provision covers the substantive rights and duties of DAC and RMS, but, standing alone, does not limit the arbitrator's authority under AHLA rules made applicable to the MSA by section 13.9. Because Provision 6.06 of AHLA rules authorizes the arbitrator to award attorneys' fees and pre-award and post-award interest,[10] DAC's argument cannot succeed.[11]

### ii. Damages

Lastly, with respect to how the arbitrator calculated damages, DAC lobs a variety of dissatisfactions at us on the topic, but offers little legal analysis and only a handful of legal citations over the course of its pages-long diatribe on all the ways the arbitrator exceeded his powers in his damages computations. But DAC does not use the minimal authority provided to explain why any of it supports the crucially relevant proposition that vacatur is necessary. This woeful lack of effort

---

[10]    AHLA Rule 6.06 states in relevant part that "[t]he arbitrator may assess reasonable attorney's fees . . . in favor of the prevailing party, as determined by the arbitrator" and "[t]he arbitrator may award pre-award and post-award interest as allowed by applicable law or as agreed by the parties."

[11]    We pause briefly to flag that DAC requested attorneys' fees from the arbitrator when it thought it would be the prevailing party, which of course underscores its understanding that the prevailing party would be entitled to attorneys' fees. See Prudential-Bache Secs. v. Tanner, 72 F.3d 234, 242-43 (1st Cir. 1995) (explaining that this is "an important factor" in deciding whether the parties agreed to award attorneys' fees in an arbitration agreement).

certainly does not give rise to the necessary "strong implication that an arbitrator exceeded his or her authority." Labor Relations Div. of Constr. Indus., 29 F.3d at 747.  Ultimately, not having done the legwork we require to develop this position, DAC has waived those challenges.  See, e.g., Rodríguez v. Municipality of San Juan, 659 F.3d 168, 176 (1st Cir. 2011); see also Holloway v. United States, 845 F.3d 487, 491 n.4 (1st Cir. 2017) (considering an argument waived for lack of development when the party did not make any legal citations supporting its argument); Zannino, 895 F.2d at 17 (stating that litigants must develop their own arguments rather than "leaving the court to do counsel's work").[12]

### c.  Arbitrator's take on *dolo*

Finally, DAC argues that the arbitrator's award should be vacated because he exhibited manifest disregard of the law. This common law doctrine (i.e., you won't find it in section 10 of the FAA) "allows courts 'a very limited power to review arbitration awards outside of section 10 [of the FAA].'"  Mt. Valley Prop.,

---

[12]  In Rodríguez, we explained

[w]hat [appellant] [did] "is hardly a serious treatment of . . . complex issue[s]" and is not sufficient to preserve these points for review, Tayag v. Lahey Clinic Hosp., Inc., 632 F.3d 788, 792 (1st Cir. 2011) -- certainly not when his "brief presents a passel" of other issues, United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam).

659 F.3d at 176.  That is precisely what happened here, so we need say no more.

Inc., 863 F.3d at 94 (quoting Advest, Inc., 914 F.2d at 8).[13] Manifest disregard of the law requires a showing that "it is clear from the record that the arbitrator recognized the applicable law -- and then ignored it." Advest, Inc., 914 F.2d at 9.

In support of this claim, DAC says the arbitrator confused *dolo* and fraud in regard to the formation of the contract (or fraudulent inducement) in contravention of what it believes to be part of this court's Dialysis I holding. DAC claims we instructed the arbitrator what the law and scope of the arbitration was to be, says we provided our own "road map" regarding the "applicable substantive law," and insists we gave "guidance as to the applicable Puerto Rico law." Yet, in manifest disregard for the law, the arbitrator ignored our directive. Again, RMS disagrees.

We start by observing that DAC's take is, at best, a misunderstanding of our Dialysis I opinion, which focused solely on the arbitrability of the parties' disputes -- it did not, as DAC says, provide instruction on the law applicable to the

_____

[13] Although the Supreme Court has queried whether manifest disregard remains a viable route to vacatur, see Mt. Valley Prop., Inc., 863 F.3d at 94 (noting that Hall Street, 552 U.S. 576, has cast some doubt on it but didn't answer the question), this court has avoided answering the question and instead has assumed its continued application when no manifest disregard of the law occurred, see id. (taking that route). Here, for reasons we will explain, there was no manifest disregard of the law, so the court can continue to leave that question for another day.

underlying disputes. Rather, the <u>Dialysis I</u> court ferreted out what the asserted allegations in the complaint seemed to be, then it laid out the law of *dolo* and fraud in its effort to determine what type of legal claim was likely being raised. 638 F.3d at 378-79. Concluding that the claim appeared to be about the voidability of the MSA based on a "fraudulent inducement claim," we held this type of allegation fell within the scope of the agreement and sent the parties off to arbitrate, leaving it to the arbitrator to sort through the vying legal contestations. <u>Id.</u> at 379.

Notwithstanding DAC's misinterpretation of <u>Dialysis I</u>, even if we assume the arbitrator confused or misapplied the law (which we doubt), DAC still cannot succeed. DAC bears the burden of demonstrating that the arbitrator was confronted with the correct law to apply but proceeded "then [to] ignore[] it." <u>Advest, Inc.</u>, 914 F.2d at 9. DAC has made no such showing. Without a doubt, DAC presented the arbitrator with a boatload of legal theories on why it believed RMS engaged in *dolo* and how its conduct impacted contract formation. But the arbitrator rejected those arguments and rejection is not "ignor[ing]." <u>Id.</u> We say no more.

### Wrapping up

As we sum up, we remind the reader that "[a]rbitral awards are nearly impervious to judicial oversight." <u>Teamsters Local Union No. 42</u>, 212 F.3d at 61. Today's case was no exception.

- 22 -

All in all, under the FAA, the arbitrator's award was supportable and the district court did not err in refusing to vacate it. DAC has not shown any arbitrator misconduct, that the arbitrator exceeded his powers in calculating the award, or that the arbitrator manifestly disregarded the law. Indeed, DAC has demonstrated no grounds upon which we could grant it the relief it seeks. The bulk of DAC's appeal truly comes down to it wanting to relitigate the merits of its arbitration claims and to contest the arbitrator's weighing of the evidence, but we simply "are not authorized to reconsider the merits of arbitration awards," Advest, 914 F.2d at 8, and "[w]e do not sit as a court of appeal to hear claims of factual or legal error by an arbitrator or to consider the merits of the award." Asociación de Empleados del E.L.A., 559 F.3d at 47. The arguments supportably made to advance DAC's effort to do these things did not carry the day, as we've explained above.[14]

Because we affirm the district court's determination that vacatur of the arbitration award is not warranted, we also

---

[14] As to all the contentions waived along the way in this appeal, we note that the mere use of "buzzwords" ("arbitrator misconduct," "exceeded his powers," "manifest disregard," and the like) does not a proper argument make. See, e.g., Rodríguez, 659 F.3d at 175-76 (deeming waived arguments offered with no citations or analysis -- "[s]ure, he uses some buzzwords and insists that the judge stumbled in ruling on these claims[, b]ut he provides neither the necessary caselaw nor reasoned analysis to show that he is right about any of this").

affirm the court's confirmation of the award.  See 9 U.S.C. § 9 ("[T]he court must grant [an order confirming the award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.").

## CONCLUSION

For these reasons, we conclude that the district court was correct in denying DAC's challenge and confirming the award. Accordingly, we affirm.  Costs to appellee.